IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA        )
                                )
                   Plaintiff,   )
                                )
v.                              )        Case No. 15-00342-CR-W-HFS
                                )
MARY G. MCGOVERN,               )
                                )
                   Defendant.   )

## ORDER

After pleading guilty to possession with intent to distribute

5 grams or more of methamphetamine, defendant was

sentenced to a term of imprisonment of 63 months to be

followed by 5 years of supervised release. (Doc. 36, Judgment

and Commitment dated Oct. 20, 2017). Defendant was directed

to self-surrender to a facility designated by the Bureau of

Prisons ("BOP") by November 29, 2017; in order to

accommodate medical treatments for various conditions, the

1

date to self-surrender was extended approximately five times, ultimately resulting in the issuance of an arrest warrant due to defendant's failure to self-surrender.

Through counsel, defendant has filed a motion for modification of her sentence pursuant to 18 U.S.C. § 3582(c)(1), also known as a Motion for Compassionate Release. (Doc.73 ).

Until recently, a district court could order a defendant's release on grounds like those at issue here only on motion of the Director of the Bureau of Prisons. The First Step Act changed this, allowing a sentence reduction on the motion of the Director *or the defendant*. *See* 18 U.S.C. §3582(c)(1)(A). A defendant may file such a motion after exhausting administrative remedies, or if more than 30 days have passed since a request for relief was delivered to the warden of the defendant's facility. More than 30 days have passed; and

2

defendant claims, and the Government concedes that administrative remedies have been exhausted.

Thus, the inquiry here is whether there exists extraordinary and compelling reasons to reduce defendant's sentence, which as the parties agree, would essentially result in a time-served determination. The statute allows a sentence reduction if, after considering the sentencing factors in 18 U.S.C. § 3553(a) to the extent applicable, the Court finds that "extraordinary and compelling reasons warrant such a reduction".

Defendant claims that overwhelming evidence of the increased risk of infection in prisons due to the pandemic, as well as her medical conditions demonstrate extraordinary and compelling reasons. (Doc. 73). The stated medical conditions include Type 2 diabetes mellitus, hypertension,  deep vein

3

thrombosis ("DVT"), and lower back pain requiring surgeries

that resulted in infections. Defendant also provides treatment

records from the BOP Health Services Clinical Encounter. (Doc.

73-3).

The Government states that while it is sensitive to

defendant's concerns about the COVID 19 virus and it does not

minimize the risk to inmates, it argues that the BOP has taken

significant measures to protect the health of all inmates by

planning for potential coronavirus transmissions. (Doc. 78, pgs.

8-12).

The Probation Officer also opposes a reduction of

sentence and notes that defendant is only 56 years of age and

has only served approximately 2 years of her sentence. (Doc.

81). The Probation Officer also notes that while defendant may

be unable to safe-care in a custodial setting, she is currently

housed in a Federal Medical Center with a low infection rate and provides unique care for individuals with medical and mental health needs. And out of the four levels of medical care classifications, defendant's health needs are rated at level two. Finally, the Probation Officer notes that defendant's home plan includes residing at a home rented by her family where she would presumably be left alone to self-care.[1]

After exhaustion of administrative remedies, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence after consideration of the factors in 18 U.S.C. § 3553(a) that demonstrate extraordinary and compelling reasons for the reduced sentence and the reduction is consistent with the applicable policy statements in the Sentencing Guidelines.

---

[1] The Probation Report does not deal with specific medical risks that might weaken the immune system for getting the virus or dying from the illness (blood clotting for one or the diabetes category). Heightened risks that an individual may face based on medical conditions if he contracted COVID-19 can weigh heavily in favor of release. United States v. Galaz, 2020 WL 4569125 *4 (S.D.Ca.).

*United States v. Shamilov*, 2020 WL 2029600 * 2 (D.Minn.). In

*Shamilov*, Judge Nelson considered the defendant's cited

longtime issues with asthma and his argument that his medical

condition rendered him susceptible to the virus, as well as his

concern about the care of his mother suffering with cancer.

Judge Nelson also considered the Government's argument that

the BOP was taking appropriate action to curtail the spread of

the virus within its facilities, and concluded that defendant's

arguments failed on the merits. (motion unsupported by

sufficient medical documentation).

Similarly, here, defendant also fails to present persuasive

medical evidence  of extraordinary and compelling reasons

warranting sentence reduction.   There is no dispute that

defendant, at 55 years of age, suffers from chronic diseases

such as diabetes and hypertension, and this court is cognizant

of defendant's lower back issues, surgeries and attendant infections. I disagree with the Government's assessment of defendant as a danger to the community.[2] However, defendant fails to submit evidence that she is suffering from a terminal illness or that her chronic conditions are so disabling as to substantially diminish her ability to provide self-care within the environment of the correctional facility in which she is currently residing. Further, defendant does not submit any professional medical opinions attesting that her conditions are life threatening. Shamilov, supra; see also, United States v. Bledsoe, 2020 WL 4559424 (D.Minn.), in which the court found that although diabetes presents a particularized susceptibility to the virus, the defendant did not demonstrate a particularized risk

---

[2] While not minimizing the seriousness of the drug offense defendant has pled guilty to, there is minimal evidence in her criminal history as a whole implicating a danger to the community.

of contracting the virus; <u>citing</u>, <u>United States v. Edison</u>, 2020 WL

3871447 *3-4 (D.Minn.)(the risk of contracting the virus alone is

insufficient to warrant release where the facility that defendant

resided was taking appropriate steps to mitigate the spread of

the disease).

Defendant contends that the comparatively few recent

cases of COVID-19 reported at FMC Carswell (where defendant

resides) does not prevent the reduction of her sentence, "and

at this point is of little relevance." (Doc. 73, pg. 14). The courts

in <u>Bledsoe</u> and <u>Edison</u> would disagree. Also, in <u>United States v.</u>

<u>Feiling</u>, 2020 WL 1821457 (E.D.Va.), the court held that while

the virus presents a considerable threat to the health of federal

inmates, the mere existence of the virus in society and the

possibility that it may spread to a particular prison alone cannot

independently justify compassionate release, especially

considering the BOP's statutory role and its extensive efforts to curtail the virus's spread. (joining district courts in holding that the mere existence of the virus among the prison population and an inmate's susceptibility to it do not justify waiver of the exhaustion requirement and does not demonstrate extraordinary and compelling reasons).[3]

A balancing of rights and interests necessarily occurs, as in sentencing. To review such mental gymnastics, in this case the following observations are offered. In her memorandum to the court (Exh. 79-4) Ms. McGovern reports that a "full facility lockdown" was finally imposed on June 30, in which she became essentially "trapped in my unit." However damaging that may have been to her, the record suggests it may have

---

[3] It is noted that the defendant in <u>Feiling</u>, presented as 71 years of age, suffering from diabetes, high blood pressure, obesity, respiratory issues and metabolic syndrome which have been identified by the Centers for Disease Control and Prevention as factors most likely to cause COVID-19 complications. at *3.

been effective soon thereafter, and the pandemic may have substantially been brought under control at the facility, with very few current cases in a facility housing more than 1,000 inmates.

Thus, the principal basis for release may have changed, from covid-19 to conditions of confinement. While that normally results in litigation outside this district, seeking a change of conditions or damages, there is no briefing offered supporting that basis for complete release from further imprisonment (habeas type relief or conceivably "compassionate release"). The practical remedy might be a furlough, which can be granted only by the warden.[4]

---

[4] Government counsel is requested to submit Ms. McGovern's document attached to the Reply Brief to the warden, for appropriate consideration (with the rest of this file, if needed)."

If a few months remained to be served, most judges would probably consider Ms. McGovern's health problem "extraordinary" and reduce the danger by ordering release. When two-thirds of the sentence remains to be served, only a more truly extraordinary health danger would justify release (or a furlough)--perhaps a one in fifty risk of a fatal illness. When the risk may be very troubling to a defendant and family but apparently rather remote, perhaps one in 500 at the present time, it is not appropriate to over-ride the authority of the Bureau of Prisons. Unfortunately, guessing from afar, based on an advocate's paper collection, and relying on generalities, has its weakness. The Bureau retains the primary responsibility for inmate health and safety, although anticipation of the pandemic is something else again. Only on-

_____

site professionals can reliably make sensible judgments as to future health, and even then we deal in guesses. If prison conditions are intolerable, as alleged, suit can presumably be filed in Texas or the District of Columbia.[5]

Defendant's note to the court complains of restrictions but acknowledges progress in overcoming recent outbreaks of covid-19. If conditions suddenly worsen, the most rapid form of relief would presumably be a furlough, granted by the warden, which preserves all interests by safeguarding inmate health while retaining appropriate punishment (and personal deterrence of Ms. McGovern, who though not a danger to the community has a history showing likelihood of criminal misconduct).

---

[5] Such litigation has been attempted by a pro se group, but no lawyer has been involved.

12

Accordingly, defendant's motion for compassionate release (Doc. 73) is DENIED.

s/ HOWARD F. SACHS
**HOWARD F. SACHS**
UNITED STATES DISTRICT JUDGE

September  8, 2020

Kansas City, Missouri